1
2
3
4
5
6                 UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF WASHINGTON
7                          AT SEATTLE

8    ALLEN T.,

9                       Plaintiff,                 Case No. C20-1257-MLP

10          v.                                     ORDER

11   COMMISSIONER OF SOCIAL SECURITY,

12                      Defendant.

13

14                       **I.      INTRODUCTION**

15          Plaintiff seeks review of the denial of his application for Disability Insurance Benefits.

16   Plaintiff contends the administrative law judge ("ALJ") erred by (1) finding that his psoriasis did

17   not meet a listing at step three, (2) discounting his subjective testimony, and (3) failing to

18   consider the contemporaneous examination notes when assessing an opinion written by

19   Madhurina Roy, M.D. (Dkt. # 13 at 1.) As discussed below, the Court REVERSES the

20   Commissioner's final decision and REMANDS this case for further administrative proceedings.

                         **II.     BACKGROUND**
21
            Plaintiff was born in 1974; graduated from high school and has some college education;
22
     and has worked as a delivery driver, data entry operator, taxi dispatcher, and file clerk. AR at 38-
23
     41, 51. Plaintiff was last gainfully employed in February 2011. *Id.* at 211.

In January 2018, Plaintiff applied for benefits, alleging disability as of January 1, 2012.[1] AR at 188-89. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing.[2] *Id.* at 108-14, 116-24. After the ALJ conducted a hearing in November 2019 (*id.* at 31-56), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 15-25.

Utilizing the five-step disability evaluation process,[3] the ALJ found:

Step one: Plaintiff did not engage in substantial gainful activity between his amended alleged onset date (December 13, 2014) through his date last insured ("DLI") (December 31, 2016).

Step two: Through the DLI, Plaintiff had the following severe impairments: obesity, low back strain, headaches, lower extremity venous insufficiency, and psoriasis.

Step three: Through the DLI, these impairments did not meet or equal the requirements of a listed impairment.[4]

Residual Functional Capacity ("RFC"): Through the DLI, Plaintiff could perform sedentary work with additional limitations: he could occasionally lift/carry 20 pounds and frequently lift/carry about 10 pounds. He could stand/walk two hours total in an eight-hour workday, and sit for six hours in an eight-hour workday. He could occasionally climb ladders, ropes, or scaffolds; and crawl. He could frequently handle, finger, and feel bilaterally. He needed to avoid concentrated exposure to hazards.

Step four: Through the DLI, Plaintiff could perform his past relevant work as a taxi dispatcher.

Step five: In the alternative, there were also other jobs that exist in significant numbers in the national economy that Plaintiff could have performed through the DLI, and therefore Plaintiff is not disabled.

AR at 15-25.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

---

[1] Plaintiff amended his alleged onset date to December 13, 2014. AR at 15.
[2] Plaintiff had also applied for SSI, and this application was approved in July 2018. AR at 66.
[3] 20 C.F.R. § 404.1520.
[4] 20 C.F.R. Part 404, Subpart P, Appendix 1.

### III.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

### IV.    DISCUSSION

#### A.    The ALJ Did Not Err at Step Three

At step three, the ALJ considers whether one or more of a claimant's impairments meet or medically equal an impairment listed in Appendix 1 to Subpart P of the regulations. "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan*

*v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original; citations omitted).

Plaintiff bears the burden of proof at step three. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). A mere diagnosis does not suffice to establish disability. *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). "'[An impairment] must also have the *findings* shown in the Listing of that impairment.'" *Id.* at 1549-50 (quoting 20 C.F.R. § 404.1525(d); emphasis added in *Key*). To meet a listing, an impairment "must meet *all* of the specified medical criteria." *Sullivan*, 493 U.S. at 530 (emphasis in original).

Plaintiff argues that the ALJ erred in finding that his psoriasis did not meet Listing 8.05, which covers dermatitis conditions "with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 8.05. "Extensive skin lesions" is defined to include, for example: (1) skin lesions that interfere with the motion of a claimant's joints and very seriously limit the claimant's use of more than one extremity; (2) skin lesions on the palms of both hands that very seriously limit the claimant's ability to do fine and gross motor movements; or (3) skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit the claimant's ability to ambulate. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 8.00(C)(1).

The ALJ explicitly considered this listing, but found that Plaintiff did not satisfy all of the requirements:

> [T]here is no documentation from the relevant period of extensive skin lesions
> that persist for at least three months despite continuing treatment as prescribed.
> Extensive skin lesions are those that involve multiple body sites or critical body
> areas and result in a very serious limitation, such as very serious limitations on the
> abilities to do fine and gross motor movements or ambulation. There is evidence
> from the relevant period the claimant did not follow recommended treatment (*see
> e.g.* [AR at 336]). In addition, physical examinations documented some findings,
> but nothing that would indicate serious limitations on the abilities to perform fine
> and gross motor movements or to ambulate (*see e.g.* [*id*. at 336-38], *etc.*).

AR at 20. Indeed, the record shows that Plaintiff did not follow up with his dermatologist at any point during the adjudicated period despite referrals and recommendations, and even though Plaintiff did have psoriasis on his hands and feet, there is no suggestion in the record that Plaintiff had a serious limitation on his ability to perform fine or gross motor movements or to ambulate. *See id.* at 277, 282, 322, 342, 344.

Plaintiff notes that he saw a dermatologist one week into the adjudicated period as well as after his DLI (dkt. # 13 at 9), but does not dispute that he was instructed to return during the adjudicated period and provided with referrals, and did not follow up.[5] Furthermore, although Plaintiff suggests that his psoriasis symptoms "strongly indicate that [he] would have struggled to use his bilateral hands for gross motor movements" (dkt. # 13 at 8-9), he does not identify any evidence in the record where such struggle was observed or reported during the adjudicated period. Plaintiff's conjecture ("It is difficult to imagine Plaintiff was not limited in fine and gross manipulation as well as ambulation when both his hands and feet were repeatedly documented as being cracked, peeling, and swollen" (dkt. # 15 at 2-3)) is not sufficient to show that the ALJ's reading of the record was unreasonable. Accordingly, because Plaintiff has not met his burden to show that he meets all of the listing requirements, he has not established error in the ALJ's step-three findings.

### B.     The ALJ Erred in Failing to Address Dr. Roy's Entire Opinion

Dr. Roy examined Plaintiff in June 2015 and completed a form opinion describing his symptoms and limitations. AR at 288-90. She opined that Plaintiff could perform sedentary work, despite limitations caused by his psoriasis, psoriatic arthritis, and venous insufficiency. *Id.*

---

[5] To the extent that Plaintiff attempts to argue that he satisfies the listing based on compliance with treatment between May 2014 and November 2014, he fails to acknowledge that this time period predates his alleged onset date (December 13, 2014). (Dkt. # 15 at 2.)

The ALJ found Dr. Roy's opinion to be consistent with and supported by her examination notes. *Id*. at 22 (citing *id*. at 306).

Plaintiff argues that the ALJ erred in failing to note that in her examination notes, Dr. Roy indicated that Plaintiff should elevate his legs and may use Ted hose for his venous insufficiency. (Dkt. # 13 at 10 (citing AR at 306).) Because the ALJ did not include this limitation in the RFC assessment, Plaintiff argues that the ALJ erred in providing no explanation for her omission. Furthermore, Plaintiff notes that the ALJ explicitly found no evidence that Plaintiff was advised to elevate his legs during the adjudicated period, which is not accurate in light of Dr. Roy's examination notes. (Dkt. # 13 at 10-11.)

The Commissioner argues that Dr. Roy's examination notes do not constitute a medical opinion under the definitions included in the new regulations because the notes do not address what Plaintiff can still do despite his or her impairments, or whether Plaintiff has any functional workplace limitations. (Dkt. # 14 at 4-5 (citing 20 C.F.R. § 404.1513(a)(2)).) Plaintiff agrees that the new definition of a medical opinion applies here, but nonetheless contends that Dr. Roy's examination notes do constitute a medical opinion because the need to elevate legs would implicate Plaintiff's workplace functioning. (Dkt. # 15 at 4-5.)

The Court finds Plaintiff's argument persuasive. Dr. Roy's examination notes recommend that Plaintiff elevate his legs, which implicates Plaintiff's ability to sit and therefore references a functional workplace limitation. AR at 306. As such, Dr. Roy's examination notes constitute a medical opinion under the new regulations. *See* 20 C.F.R. § 404.1513(a)(2). The ALJ did not discuss the limitations found in Dr. Roy's examination notes and thus erred in failing to provide any rationale for not accounting for that portion of Dr. Roy's opinion in the RFC assessment. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). On remand, the ALJ shall

reconsider Dr. Roy's opinion in its entirety.[6]

## C. The ALJ Did Not Harmfully Err in Discounting Plaintiff's Subjective Testimony

The ALJ discounted Plaintiff's subjective testimony because (1) Plaintiff's reports to his providers during the adjudicated period were inconsistent with his allegations; (2) Plaintiff regularly presented to medical appointments in no distress and/or as comfortable, which contradicts his allegations of severe pain caused by his conditions; (3) the objective physical findings were not as severe as alleged during the adjudicated period, but worsened after Plaintiff's DLI; and (4) Plaintiff did not seek all available treatment and did not always comply with treatment. AR at 21-22. Plaintiff argues that these reasons are not clear and convincing, as required in the Ninth Circuit. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

The ALJ's last reason to discount Plaintiff's allegations — evidence of his failure to comply with treatment recommendations — is a clear and convincing reason to discount Plaintiff's allegations. Plaintiff visited a dermatologist in December 2014 and was instructed to return in three months or as needed, and referred to rheumatology for his joint problems, but did not return to his dermatologist or follow up on the rheumatology referral.[7] *See* AR at 282-83. He was provided multiple dermatology referrals during the adjudicated period (see *id*. at 336, 340, 342, 345), but did not follow up with dermatology until after his DLI. Although Plaintiff did see other providers for treatment of his psoriasis, they recommended that he see a dermatologist and his failure to do so during the adjudicated period undermines his allegations of a disabling skin

---

[6] Although Plaintiff requests, in the alternative, a remand for a finding of disability (dkt. # 13 at 18), Plaintiff makes no attempt to show that this extraordinary remedy would be appropriate here. *See Leon v. Berryhill*, 880 F.3d 1044, 1045 (9th Cir. 2017) ("An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule."). Thus, the Court orders that this case be remanded for further administrative proceedings.

[7] There is evidence in the record indicating that Plaintiff did not follow up on his rheumatology referral due to a lapse in insurance coverage. *See* AR at 305.

condition. *See Burch v. Barnhart¸* 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination.").

The ALJ also highlighted an irregularity in Plaintiff's use of pain medication: test results revealed Plaintiff's undisclosed use of methadone, and also indicated that he was not taking Percocet as prescribed. AR at 22 (citing *id*. at 336). This evidence also supports the ALJ's finding that Plaintiff's failure to comply with treatment as prescribed undermines the reliability of his self-reporting. *See Molina*, 674 F.3d at 1113-14.

The ALJ's other reasons to discount Plaintiff's allegations are persuasive or partially persuasive as well. Although Plaintiff contends that the ALJ's first reason is not supported by substantial evidence because the ALJ cited only one example (AR at 342) of Plaintiff's reporting to a provider that his pain was controlled by medication (Dkt. # 12 at 13), when this reason is viewed in conjunction with the ALJ's second reason — that Plaintiff regularly presented to appointments during the adjudicated period in either no distress or appearing comfortable (AR at 21) — the ALJ reasonably concluded that Plaintiff's pain was not as severe as he alleged, during the adjudicated period.[8]

Plaintiff does not dispute the ALJ's general assertion in the third reason — that Plaintiff's objective physical findings were not as severe during the adjudicated period as they were after the DLI — but argues that even if Plaintiff's condition worsened post-DLI it does not necessarily follow that he was not disabled pre-DLI. (Dkt. # 13 at 14-15.) This line of reasoning may not alone support the ALJ's assessment of Plaintiff's allegations, but it is nonetheless relevant that

---

[8] To the extent that the ALJ's reasoning relates to a lack of corroboration for Plaintiff's alleged need to elevate his legs (AR at 21), the Commissioner does not defend this line of reasoning and it is inaccurate, when considering Dr. Roy's examination notes (*id*. at 306), as discussed *infra*. The error in this portion of the reasoning is harmless, however, because the ALJ provided other valid reasons to discount Plaintiff's testimony. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

although Plaintiff was found eligible for benefits post-DLI, the evidence (*e.g.* AR at 541 (Plaintiff's report in January 2018 that his psoriasis had gotten worse in the past six months)) shows that his condition had worsened after the adjudicated period. The ALJ did not err in finding that evidence of worsening post-DLI undermined Plaintiff's allegation of disability pre-DLI. *See, e.g.*, *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (explaining that because a claimant's hearing testimony described her post-DLI condition, which had worsened since the adjudicated period, the ALJ did not err in discounting her testimony because "'any deterioration in her condition subsequent to [the period of eligibility] is, of course, irrelevant'" (quoting *Waters v. Gardner*, 452 F.2d 855, 858 (9th Cir. 1971))).

Because the ALJ provided clear and convincing reasons to discount Plaintiff's subjective allegations, the Court affirms this portion of the ALJ's decision.

## V.     CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reconsider Dr. Roy's opinion in its entirety, and reconsider any other portions of the decision as necessary.

Dated this 11th day of May, 2021.


_____
MICHELLE L. PETERSON
United States Magistrate Judge